# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1396 | **DATE** | 2/25/2004 |
| **CASE TITLE** | SAMPSON, ET AL vs. RIDGE CHRYSLER, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Motion (16-1) for class certification is denied. Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | FEB 27 2004 | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | 49 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| DW | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ONETA S. SAMPSON
and LISA STROUD,

    Plaintiffs,

v.

WESTERN SIERRA ACCEPTANCE
CORP., RIDGE CHRYSLER /
PLYMOUTH, LLC doing business as
MARQUETTE CHRYSLER JEEP,

    Defendants.

No. 03 C 1396
Judge James B. Zagel

**DOCKETED**
FEB 27 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Oneta Sampson brought this action seeking redress against Defendants Western Sierra Acceptance Corporation ("Western Sierra") and Ridge Chrysler Plymouth, LLC ("Ridge Chrysler") for accessing her credit report without her consent or any lawful reason, in violation of the Fair Credit Reporting Act (FCRA). Plaintiff now seeks class certification pursuant to Federal Rule of Civil Procedure 23. The proposed class would consist of all persons whose credit reports were accessed or caused to be accessed by Western Sierra for the purpose of transmitting the "Pre-Approved Notices" (See Plaintiff's. Mem. Exhibit A) on or after Feb. 25, 2001.

In considering Plaintiff's motion for class certification, I may not conduct a preliminary inquiry into the merits of the underlying claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974). However, I may look beyond the pleadings to determine whether the requirements of Rule 23 are met. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). In order to proceed as a class action, plaintiffs must prove their action meets the four

49

requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy as well as the requirements of at least one subsection of Rule 23(b).[1] *Eisen*, 417 U.S. at 163.

A. Rule 23(a)(1) Numerosity

The potential class of approximately 65,000 members easily meets the numerosity requirements of Rule 23(a)(1). This estimate is based on the number of persons who received the "Pre-Approved Notice."[2] A potential class of this size would certainly make joinder impracticable. *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).

B. Rule 23(a)(2) Commonality & Rule 23(a)(3) Typicality

Plaintiff's factual and legal issues are sufficiently similar to those of the potential class to satisfy both the commonality and typicality requirements of Rule 23(a)(2) and Rule 23(a)(3) respectively. The issues of commonality and typicality are closely related, *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), and as such can be dealt with together here. Defendants' alleged wrongful accessing of credit reports and sending of mailers constitutes standardized conduct and creates commonality. *Keele*, 149 F.3d at 594 (citation omitted). This single course of action by Defendants leads to the central legal question of this case, whether obtaining a credit report for the purpose of transmission of the "Pre-Approved Notice" violated the FCRA, and creates typicality. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

---

[1] In their Response, Defendants do not address the requirements of Rule 23(a). Instead, they argue that class certification is not warranted because Plaintiff has failed to meet the requirements of Rule 23(b).

[2] Plaintiff suggested this limited class in their Reply Brief. Plaintiff originally suggested a potential class that included individuals who received materials similar to the "Pre-Approved Notice" and would have included approximately 195,000 members.

2

C. Rule 23(a)(4) Adequacy

The named Plaintiff, Oneta Sampson, adequately represents the class as a whole. Sampson has retained competent counsel, has a sufficient interest in the outcome of the case, and does not have interests antagonistic to those of the class. *In re VMS P'ship Se. Litig.*, 1992 U.S. Dist. LEXIS 14445 at *13 (N.D. Ill. Sept. 23, 1992); *See Also Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

D. Rule 23(b)(3) Predominance and Superiority

Rule 23(b)(3) requires that common questions of law or fact predominate and that the class action is the superior form of adjudication. Defendant Ridge Chrysler claims that Plaintiff is not entitled to punitive damages set by the FCRA and will instead have to prove actual damages for each individual case. These individual damages, Ridge Chysler argues, will predominate over the common issues of the class.

Even assuming that Plaintiff is not able to make a showing for punitive damages, I would still find that common issues of law and fact predominate. Generally, considerable overlap exists between the court's determination of commonality and a finding of predominance. *Mejdreck v. Lockformer*, No. 01-C6107, 2002 U.S. Dist. LEXIS 14785 at *17-18 (N.D. Ill. Aug. 9, 2002)(citing *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). Much like commonality, predominance is found where there exists a common nucleus of operative facts. *Id.* (citation omitted).

In this case, the facts concerning individual class members are very similar. Each potential class member's credit report was accessed by Defendants, and each potential class member received the "Pre-Approved Notice." The underlying questions of law, such as whether

3

the mailer violated the FCRA and whether the violation was willful, will also be the same and must be decided before the issue of damages can be reached. Although some individualized questions may exist, they should not defeat class certification. *Mejdreck*, 2002 U.S. Dist. LEXIS 14785, at *20 (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Accordingly, I find that common issues of law and fact predominate over the other issues involved in this case.

Finally, both Defendants argue that because the potential statutory award under the FCRA is disproportionate to the harm caused, a class action is not the superior method of adjudication. The FCRA provides for minimum and maximum damages of $100 and $1,000 respectively. If I certified the narrower class suggested by Plaintiff (those people who received the actual "Pre-Approval Notice"), the class would consist of 65,000 potential members. Assuming statutory damages are appropriate, this could lead to a damage award between $6.5 and $65 million.

Defendants argue that this situation is similar to those involving the Truth In Lending Act (TILA) in which many courts found class actions to be inferior to individual adjudication. In the seminal case on that issue, *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D. N.Y. 1972), the plaintiffs alleged that the defendant bank had failed to display the annual percentage rate on his credit card statement and in so doing had violated TILA. *Id.* This violation carried with it the same statutory minimum damage award as the FCRA, a minimum of $100 and a maximum of $1,000 regardless of actual harm sustained by the plaintiffs. In that case, plaintiffs sought to certify a class consisting of 130,000 cardholders, which could have led to a minimum damage award of $13 million. *Id.* The *Ratner* Court found that class actions were not superior because the aggregate potential liability "would be a horrendous, possibly

annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation." *Id.* at 416.[3]

In *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974), the Seventh Circuit found that *Ratner's* complete bar against class actions was unnecessary. The Seventh Circuit adopted instead a policy of case-by-case determination under which the possibility of "crushing damages" predicated on statutory minimums is weighed against the benefits of class actions. *Id.* at 1164-1165.[4] In making its determination to certify the class in *Haynes*, the Court found two factors to be significant: the size of the potential class and the actual damages pled by or caused to the plaintiffs.

In *Haynes*, the potential class consisted of approximately 2,500 members, which the Court noted was significantly less than the classes proposed in *Ratner* (130,000) and in other similar cases. In the instant case, there are 65,000 potential class members, a number that is

---

[3] The *Ratner* Court also found class actions to be inferior to individual action because TILA included incentives, such as the statutory minimum damages and payment of lawyers' fees and costs, that promoted individual litigation. This holding was explicitly rejected by the Seventh Circuit in *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974). The Seventh Circuit reasoned that TILA's incentives had been established not only to encourage individual lawsuits but also to encourage creditor compliance. *Id.* at 1164. Accordingly, the Seventh Circuit found that "creditors disregarding their responsibilities... should have no assurance that their accumulated responsibility cannot be enforced through [class action]." *Id.* (quoting *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 348 (10th Cir. 1973).

[4] Such benefits include allowing a greater number of individuals to enforce their rights because many individuals either lack the necessary resources or conviction to pursue a claim or are simply uninformed as to their rights. *Id.* at 1165.

5

much larger than *Haynes's* relatively small class.[5] A class of this size will certainly have manageability and notice issues that were lacking in *Haynes*.

In *Haynes*, the defendant had imposed a finance charge and had charged its customers an interest rate, creating actual damages caused to and pled by plaintiffs, which, in most cases, were likely to be greater than the statutory minimum. *Id.* at 1165. Because of these actual damages, the Court found that the defendant was not unduly prejudiced by the statutory minimum. Unlike the plaintiffs in *Haynes*, the Plaintiff here has not alleged any actual damages. Plaintiff alleges only that Defendants improperly accessed her credit reports and that she is entitled to the statutorily prescribed damages. While it is difficult to put a monetary value on the actual damage caused by this alleged improper viewing, that value is not likely to approach the statutory minimum.

Although certification should not be denied solely because of the possible financial impact on defendant, its consideration is proper when the damage award is grossly disproportionate to the actual harm caused. *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 354 (N.D. Ill. 2002). Here, the application of statutory damages, which are unrelated to any actual harm suffered by Plaintiff, would serve an unwarranted and crushing blow to thes particular Defendants.[6]

---

[5] The Plaintiff originally sought certification of a class that would include roughly 195,000 members. However, in her Reply Brief Plaintiff suggested this smaller class.

[6] $6.5 million in damages far outstrips the value of Defendants' respective businesses. Ridge Chrysler is out of business and has only $500,000 in insurance to cover any awards. (P. Reply p. 5). Western Sierra is a small business with a net worth of only $125,000. (Affidavit of James McClure, II).

6

I am mindful that without class certification the vast majority of potential class members will remain unaware their credit rights were violated. However, the negative effect of this is somewhat tempered by the financial condition of the two defendants. Ridge Chrysler has gone out of business and will not be sending out such notices in the future. Western Sierra is a small company, without insurance to cover these claims, that could be greatly impacted by even a small number of individual plaintiffs seeking redress. For these reasons, I find the possibility of a large and grossly disproportionate damage award outweighs the benefits of a class action, making individual adjudication the superior method to proceed with this case.

Plaintiffs' Motion for Class Certification is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 25 Feb 2004